# EXHIBIT F

# SECOND DECLARATION OF WILLIAM S. COOPER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| Baltimore County Branch of the National Association for the Advancement of Colored People, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>Baltimore County, Maryland, *et al.*,<br><br>*Defendants*. | Civil Action No. LKG-21-3232 |

**SECOND DECLARATION OF WILLIAM S. COOPER**

1. I previously executed a declaration on January 18, 2022, that was submitted in this action (ECF 28-2). Since then, I have reviewed Baltimore County's Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction (ECF 34) and the accompanying Declaration of James Gimpel (ECF 34-7).

2. Attached to this exhibit are modified versions of exhibits that were attached to my previous declaration.

    a. Exhibit D-3 replicates a portion of my prior Exhibit D-1, which was a map of the 2021 Council Plan. Exhibit D-3 enlarges the western portion of the County to provide greater resolution and includes additional community name details.

    b. Exhibit D-4 replicates Exhibit D-3 but overlays the Black Voting Age Population distribution details shown in my prior Exhibit C-1.

    c. Exhibit E-4 replicates a portion of my prior Exhibit E-1, which was a map of Plaintiff's Proposed Plan 1. Exhibit E-4 enlarges the western portion of the County to provide greater resolution and includes additional community name details.

      d.      Exhibit E-5 replicates Exhibit E-3 but overlays the Black Voting Age Population distribution details shown in my prior Exhibit C-1.

      e.      Exhibit F-4 replicates a portion of my prior Exhibit F-1, which was a map of Plaintiff's Proposed Plan 5.  Exhibit F-4 enlarges the western portion of the County to provide greater resolution and includes additional community name details.

      f.      Exhibit F-5 replicates Exhibit F-4 but overlays the Black Voting Age Population distribution details shown in my prior Exhibit C-1.

      3.      I have reviewed Dr. Gimpel's criticism of the compactness of the districts I drew in Plaintiffs' plans. His criticism is unfounded. Each of the districts in Plaintiffs' Plans 1 and 5 (as well as their other plans) more than satisfies measures of compactness that have been repeatedly approved by courts across the country. Notably, as shown in Dr. Gimpel's Table 1, the average compactness scores of the Plaintiffs' Plans 1 and 5 (under both the Polsby-Popper Test and the Schwartzberg Test) are greater than the average scores of the maps the County adopted in 1990 and 2000, and the district-by-district scores are comparable. Dr. Gimpel does not assert that the compactness of those earlier maps was somehow improper, and it was not. The relevant issue in Voting Rights Act cases is not which map is most compact but rather whether the maps that satisfy the other relevant criteria under the Act also comply with traditional standards of compactness. Here, Plaintiffs' proposed maps comply with traditional standards of compactness.

      4.      In his declaration, Dr. Gimpel expressed concern about the extent of "core retention" in Plaintiffs' Proposed Plan 1 and Plan 5.  I do not find these concerns legitimate.  The Plaintiffs' proposed plans each create a new councilmember district consistent with the Voting Rights Act and the *Gingles* 1 criteria.  In order achieve Voting Rights Act compliance, changes

in district boundaries are necessary.  Core retention is a largely irrelevant consideration when an election plan is challenged on the grounds that it violates Section 2.  The very nature of the challenge means that districts adjacent to the new majority-minority district must change, while otherwise adhering as much as possible to other traditional redistricting principles.  In addition, Plaintiffs' proposed Plans 1 and 5 were presented to the County Council before it adopted a redistricting plan.  Had the Council implemented Plan 1, Districts 3, 5, 6, and 7 in that plan could be reconfigured to match exactly the districts in the Council's adopted 2021 Plan.  Likewise, had the Council implemented Plan 5, Districts 5, 6, and 7 could be reconfigured to exactly fit the same districts in the adopted 2021 Plan.  These adjustments would substantially ameliorate the core retention concerns Mr. Gimpel expressed.

5. I was struck by the absence of demographic analysis in the County's filing, as well as in Mr. Gimpel's declaration, regarding the ability to design the council districts to include two reasonably compact majority-Black districts, which as my prior declaration shows is readily possible.  I have seen no evidence that either the County Council or its Redistricting Commission, which recommended the adopted 2021 Redistricting Plan to the Council, undertook any demographic or Section 2 compliance analysis to support their rejection of plans that create a second majority-Black district or to support their adoption of a plan with a single majority-Black district.

6. The Commission reported, and the Council mistakenly credited, doubts about the feasibility of creating two majority-Black districts based on faulty assertions of insufficient population within majority-Black census blocks to create a second such district.  The relevant portion of the Commission Report is quoted below.  This analysis is flawed on many levels.  Contrary to the implication of the Commission Report, a majority-Black district does not have to

3

consist exclusively of majority-Black census blocks.  As I have shown, two reasonably compact majority-Black Voting Age Population districts can readily be established with the County's Black population distribution in line with court-accepted standards under Section 2. Such majority-Black VAP districts can be established as drawn in each of Plaintiffs' plans, as well as with other borders.

     I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on February 6, 2022

William S. Cooper

**Redistricting Commission Report excerpt**:

B. Majority-Black Districts

In 2011 and again during the current redistricting process, there were requests during the public hearings and in emails from stakeholders to create another majority-minority district similar to District 4. An analysis of the Voting Rights Act and subsequent case law is set forth in the Baltimore County Redistricting Manual. The Black population is the second largest demographic group in the County at 254,137 or 29.7%. No other non-White demographic group in the County is more than 54,000 people or about 6%. To constitute a majority (50% + 1 person) in an ideally-populated district, the Black population must be at least 61,192. Given the population figure, it should be mathematically feasible to create another majority-Black district. However, this does not adequately consider two critical constraints: the population distribution – specifically racial concentration – and the inherent limitations created by the geography and physical shape of Baltimore County. It also does not account for the effect that such a drastic re-drawing of district boundaries would have on the demographics of the other five Council districts, and neighborhoods and communities.

1. Demographic Concentration

The most relevant impediment to two majority-Black districts is demographic concentration. Since districts are comprised of census blocks and the question is whether it is feasible to have two majority-Black districts, it makes sense to look at census blocks with a 50% or greater Black population. About 62% (158,300) of the County's Black population live within these majority-

Black census blocks. However, the total population of these census blocks is only 215,941. That means only about one in four people in the County live in a majority-Black census block.

The ideal size of two council districts is 244,764, meaning the total population of these majority-Black census blocks is 28,823 too small.[3] Even assuming that both hypothetical districts were permitted the -5% deviation to 116,263 each, the total population is still 16,585 short of the required minimum 232,526 population to make the two districts.

5

# COOPER DECLARATION

# EXHIBIT D-3



# COOPER DECLARATION

# EXHIBIT D-4



# COOPER DECLARATION

# EXHIBIT E-4



Proposed Plan 1

Baltimore County

# COOPER DECLARATION

# EXHIBIT E-5



# COOPER DECLARATION

# EXHIBIT F-4



Proposed Plan 5

Baltimore County

# COOPER DECLARATION

# EXHIBIT F-5

