# EXHIBIT I

## DECLARATION OF CHARLES MATTHEW HILL

DocuSign Envelope ID: 0C0FE921-10CA-42A0-BCCD-6DBF6CEEBB8F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| BALTIMORE COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*, | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Civil Action No. LKG-21-03232 |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) | |

## DECLARATION OF CHARLES MATTHEW HILL

1. I, Charles Matthew Hill, am over 18 years of age and am competent to testify. I provide this declaration in support of plaintiffs' motion for preliminary injunction in this case.

**Introduction and Qualifications**

2. I am an attorney at the Public Justice Center (PJC), a nonprofit civil rights organization in Maryland, where I lead the Human Right to Housing Project, an initiative which seeks to protect tenants' rights to safe, habitable, affordable, and non-discriminatory housing, and to fair and equal treatment by Maryland's landlord-tenant laws, courts, and agencies. Through my work at PJC, I have represented hundreds of tenants facing eviction and substandard housing conditions, advocated to create Baltimore City's Affordable Housing Trust Fund with a dedicated funding source, acted as lead or co-counsel in a number of appeals involving landlord-tenant law, represented multiple classes of tenants in class actions challenging predatory landlord practices, and advocated successfully to change Maryland and Baltimore City laws to strengthen tenant

protections. Most importantly for purposes of this matter, I also serve as co-counsel representing the Baltimore County Branch of the National Association for the Advancement of Colored People ("Baltimore County NAACP") among other complainants, in a HUD complaint and a settlement of that complaint that is currently in a monitoring phase. The agreement requires Baltimore County to dismantle longstanding policies that perpetuate racial segregation and discriminate against persons with disabilities.

3. Prior to working on the housing team at PJC, I was the Francis D. Murnaghan Appellate Advocacy Fellow at the organization. In that capacity, I represented parties and *amici* in state and federal courts on various poverty law and civil rights issues in the U.S. Court of Appeals for the Fourth Circuit, the Court of Appeals of Maryland, and the Court of Special Appeals of Maryland. I clerked for the Honorable Deborah S. Eyler on the Maryland Court of Special Appeals, after earning my Juris Doctor degree, summa cum laude, from American University's Washington College of Law and a B.A., summa cum laude, from Loyola College. Before attending law school, I taught eighth grade at Mother Seton Academy in Baltimore City.

4. Among the awards and honors I have received are the following: 2018 Lorraine Sheehan Memorial Award from the Community Development Network of Maryland; 2017 Dickens Warfield Fair Housing Advocacy Award, Baltimore Neighborhoods Inc; 2011 Housing Justice Award, Housing Justice Network, sponsored by National Housing Law Project; 2011 Maryland Access to Justice Commission Outstanding Program of the Year Award to Tenants in Foreclosure Project of Public Justice Center. Additionally, I currently serve as a commission member of the Baltimore City Affordable Housing Trust Fund Commission, and a Board member at the Baltimore Regional Housing Partnership.

DocuSign Envelope ID: 0C0FE921-10CA-42A0-BCCD-6DBF6CEEBB8F

5. In preparing this declaration, I have reviewed the Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, the Declaration of Lawrence T. Brown (Plaintiffs' historical expert), and the Declaration of Troy Williams (Baltimore County's Diversity and Equity Officer).

**Fair Housing Complaints Against Baltimore County**

6. As Plaintiffs have alleged and Dr. Lawrence Brown has recounted in compelling detail in his declaration, Baltimore County has a long and egregious history of housing discrimination, achieved through the use of exclusionary zoning and openly discriminatory housing and development policies. These practices and policies were used throughout the 20th century, but have continued into the 21st century, to drive Black residents out of the County, segregate those who do live there, and prevent Black people from moving to the County.

7. One aspect of the County's racial discrimination in housing derives from the authority of the County Council, including home-district councilmanic privileges exercised by individual council members, to thwart development of open and affordable housing. Such actions include downzoning to prevent siting of family and rental housing, demolition of existing federally-assisted housing occupied by families, and the County's failure to acquire or operate any public housing or low-income housing. Over time, these practices have made Baltimore County far less successful than other suburban counties in Maryland in meeting the fair, affordable housing needs of low-income family households, who are disproportionately African American and/or Latinx, and have made Baltimore County the most segregated major suburban jurisdiction in Maryland.

8.      Due to the County's record of race discrimination, in 2011 the Public Justice Center, along with the ACLU, Homeless Persons Representation Project, Maryland Legal Aid, and Disability Rights Maryland undertook representation of a fair housing organization called Baltimore Neighborhoods, Inc., the Baltimore County NAACP, and individual BIPOC and disabled residents, in filing an administrative action against the County with HUD, alleging extensive violations of the Fair Housing Act, Title VI of the Civil Rights Act, the Rehabilitation Act, and the Americans with Disabilities Act. In March 2016, HUD entered into a binding Voluntary Compliance Agreement (VCA) with the complainants and the County, requiring the County to undertake a myriad of actions, monitored by HUD, to address the race discrimination and segregation its policies perpetuated. I have been counsel in that case throughout the decade since its filing, and continue working on the matter today.

9.      In his Declaration filed in this case, Baltimore County Diversity Officer Troy Williams says of the Compliance Agreement with HUD:

> On March 9, 2016, the County entered a HUD Conciliation Agreement. Since the agreement took effect, the County Council has continuously approved the budget allocations called for in that agreement, including the $3 million each year for ten years to leverage financing for the creation of "hard units."

10.     While the County may have budgeted money for creation of affordable housing, the County has failed to meet its interim obligations under the VCA to facilitate the production of 1,000 "Hard Units" of affordable, accessible housing in "Opportunity Areas," i.e., 132 census tracts with high-performing schools, economic opportunities, and racial/economic diversity, within 10 years.

11.     This is in large part because the County has failed to address the entrenched zoning and land use practices that have continued to kill affordable housing projects that would have counted as "Hard Units" under the VCA and would have furthered desegregation.

DocuSign Envelope ID: 0C0FE921-10CA-42A0-BCCD-6DBF6CEEBB8F

12. For example, Councilman David Marks had previously supported the proposed 56-Hard Unit project known as "Red Maple" in an Opportunity Area in Towson. However, at the first sign of community protest, Councilman Marks introduced Bill #100-20 & Resolution #111-20 in October 2020 to change the zoning/land use for the Red Maple property with the specific goal of preventing the project from moving forward.[1] The Marks legislation passed the County Council based on a deeply embedded culture of Councilmanic courtesy where zoning decisions are made exclusively by the Councilperson in whose district the project is sited, and other Councilmembers support those decisions without question.

13. An Administrative Law Judge later found that Marks's legislation was insufficient to prevent Red Maple from moving forward, yet the County Board of Appeals, whose members are appointed by the County Council, reversed that decision. The matter is now pending before the Circuit Court for Baltimore County on appeal.

14. Similarly, during its 2020 Comprehensive Zoning Map Process (CZMP) which also includes a deeply embedded culture of Councilmanic courtesy, the Council rejected a zoning change needed to develop a 50-unit affordable housing project in Pikesville at St. Mark's on the Hill.[2]

---

[1] C. Botelier, "Councilman introduces legislation, zoning change to alter proposed affordable housing project in Towson," Baltimore *Sun,* Feb. 7, 2020, available at: https://www.baltimoresun.com/maryland/baltimore-county/towson/cng-co-to-affordable-housing-east-towson-20200207-kk5rhqxvkfcvrebwsj4fpsjjla-story.html

[2] A. Knezevich and T. Deville, "Baltimore County wants to expand affordable housing. Advocates say the still face significant obstacles," Baltimore *Sun*, April 29, 2021, available at: https://www.baltimoresun.com/maryland/baltimore-county/bs-md-co-affordable-housing-20210429-tke3tbkiw5ei3cv6zq67nvafhu-story.html

15. According to affordable housing developers in the County, this version of "spot zoning"[3] and NIMBY land use practices have had a chilling effect on the further development of Hard Units: "'Until the political climate changes in Baltimore County, or they change their process, I don't see us being able to build in Baltimore County,' said Ellen Jarrett, director of housing and planning and development for Comprehensive Housing Associates Inc., a nonprofit that wanted to develop the Pikesville site."[4]

16. Additionally, among many other failures to comply with the VCA, the County has purchased land in Opportunity Areas and changed its zoning such that no affordable housing units could be built; the County has failed to consistently require Hard Unit developers to comply with affirmative marketing requirements; and the County has failed to produce the required number of accessible units for persons with disabilities as well as to change its housing program policies to better identify and meet the needs of persons with disabilities.

17. As a result of the County's failure to substantially change its land use and zoning processes, the County has failed to meet the interim unit requirements of the VCA with respect to Hard Units. As of December 31, 2021, the County reported that 544 total hard units have been approved for County financing – significantly short of the 570 units required a year earlier, at the conclusion of 2020, and of the 670 units required by the end of 2021. Even the 544 Hard Units reported by the County is likely an overstatement since it includes the 56 Red Maple units that the Board of Appeals has blocked pending appeal.

---

[3] T. Deville, "A 'slippery slope': Baltimore County residents say council skirts zoning process, state law with targeted bills" Baltimore *Sun*, August 9, 2021, available at: https://www.baltimoresun.com/maryland/baltimore-county/bs-md-co-special-bills-land-use-20210809-kzmaldxrrzbx7ioadw6k7uaoxi-story.html

[4] A. Knezevich and T. Deville, *supra* at n.2.

18. These failures give rise to serious continuing concerns about Baltimore County's unwillingness to reform the zoning and land use structures that have furthered racial and economic segregation and led to its failures of compliance with the VCA, raising the possibility that enforcement action may be needed to bring the County into compliance with the agreement.

I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Date: 2/6/2022

Charles Matthew Hill