UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| BALTIMORE COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BALTIMORE COUNTY, MARYLAND, *et al.*,<br><br>Defendants. | Civil Action No. LKG-21-03232 |

## PLAINTIFFS' STATUS REPORT

On behalf of the Plaintiffs in the above-captioned matter, we submit this report in response to the Court's February 22, 2022, Order directing the parties to file "a joint status report setting forth their respective views on how this matter should proceed." ECF No. 55. Despite agreeing to provide its portion of this report to Plaintiffs this morning, Baltimore County has not done so as of 3:00 p.m. on March 8. Therefore, Plaintiffs feel obliged to update the Court in a fashion that reflects the urgency and seriousness of this matter.

As of this filing, the County has refused to provide Plaintiffs with its new proposed council districts map but has informed Plaintiffs that the map does *not* include two majority Black districts. For the reasons described below, Plaintiffs believe that the Court should (1) schedule a pre-motion conference at the Court's earliest convenience, and ideally on either March 10 or March 11, to set an expedited schedule to determine whether Baltimore County's still-undisclosed proposed new map complies with Court's February 22 Order requiring the County to adopt a redistricting map that includes a second majority-Black district or "an additional County District in which Black

voters otherwise have an opportunity to elect a representative of their choice and that comports with the requirements of the Voting Rights Act, 52 U.S.C. § 10301, and any other relevant constitutional and statutory requirements" and (2) order the County to immediately produce the data necessary to allow an evaluation of whether its new proposed map complies with the Court's Order (i.e., to produce shapefiles of the new map and a list of precincts by district, as described below).

### Developments Since the February 22, 2022, Order

1.  As of this filing, the County has refused to provide Plaintiffs with its new proposed map but has informed Plaintiffs that the map does *not* include two majority Black districts.

2.  As of this filing, the County has withheld the data necessary to assess whether the map complies with the Court's order.[1]

3.  Despite Plaintiffs having contacted the County repeatedly to offer Plaintiffs' assistance to analyze the County's proposed map and to reduce the possibility for future conflict, the County has stonewalled, refusing to provide either the map or the underlying data. Counsel for the County did not return Plaintiffs' calls, texts, and emails until *yesterday evening*,[2] at which point the County refused to provide either the proposed new map or the data necessary to assess

---

[1] The necessary data is (a) an Excel spreadsheet of each precinct together with its councilmanic district and (b) the "shapefiles" of the new map. Shapefiles is a format for storing the location, shape, and attributes of geographic features. It is used by redistricting software and allows experts to integrate geographic borders, demographic information, and voting history into a single format. Despite Plaintiffs' express request for the shapefiles for the County's new map, the County has not provided them or the precinct list. Last evening, Baltimore County asked for shapefiles of Plaintiffs' Proposed Maps 1 and 5. Plaintiffs immediately provided them. Why Baltimore County waited months to request the data underlying Proposed Maps 1 and 5 (which were provided to the County Council early last Fall) is unknown.

[2] Attached as Exhibit A is an email chain between counsel for Plaintiffs and counsel for Baltimore County.

compliance, contending that under the Court's Order the County need not submit its map, despite its availability, until sometime before 11:59 p.m. on March 8.

4. Baltimore County's refusal to provide the data necessary to assess compliance with the Order is inexplicable and particularly problematic in light of the County's stated refusal to include a second majority-Black district in the new map. Without expert analysis of this data, it is impossible to determine whether the County's new proposed map complies with the Court's order that "Black voters otherwise have an opportunity to elect a representative of their choice." Without such analysis, it is speculative guesswork to say, as the County purports to do, that Black voters have an opportunity to elect a representative of their choice. That is why Plaintiffs repeatedly offered the services of their nationally renowned expert Dr. Barreto to assist with conducting such analysis. The County rejected his services, and, to our knowledge, it has not utilized any expert to analyze whether the new district provides Black voters with the opportunity the Voting Rights Act requires.

5. *Time is of the essence*. Plaintiffs fear that Baltimore County will, once again, try to evade judicial review on timeliness grounds after having itself delayed proposing a new map until, literally, the eleventh hour. We do not know what has taken the County so long. The Court entered a preliminary injunction *two weeks ago*, and the County has been on notice that its now-enjoined map was illegal *for months*. It is not difficult to draw a map compliant with the requirements of the Voting Rights Act and any other relevant constitutional and statutory requirements. Plaintiffs have provided plenty of examples. If the County were genuinely interested in moving this action forward expeditiously, it would have provided Plaintiffs with its new proposed map (which it apparently has had for days) at the earliest opportunity rather than refusing to provide it until the last minute.

6. Given the County's lack of responsiveness and forthrightness, Plaintiffs are concerned that the County is not making a serious effort to comply with the Court's Order. As seen by the history of this case, Baltimore County has already undertaken extensive efforts to deny Black citizens their commensurate share of voting power. It would be unsurprising for Baltimore County to continue its resistance to Black political equality by feigning compliance with the Voting Rights Act.

**Proposal Regarding How This Matter Should Proceed**

7. For these reasons, Plaintiffs request a telephonic or Zoom conference with the Court at the Court's earliest convenience.

8. Plaintiffs respectfully request that the Court direct the County to immediately provide Plaintiffs with (1) an Excel spreadsheet of the precincts under the Council's new proposed map, with two columns – the first a complete precinct list and the second the district number for each precinct, and (2) the shapefiles of the new proposed map.

9. Once Plaintiffs receive the information and data described above, Plaintiffs and their experts will promptly analyze the newly drawn map and consider whether it complies with the Court's preliminary injunction order and fully remedies the Section 2 violation.

10. In the event that Plaintiffs determine that Baltimore County's new proposed map does not comply with the Court's Order (*i.e.*, it will not provide "an additional County District in which Black voters otherwise have an opportunity to elect a representative of their choice"), the parties should have a brief opportunity to address that issue along with what the appropriate remedy should be if the Court finds that Baltimore County's new proposal is still unlawful.

11. If the Court determines that the new proposed map fails to comply with its Order or otherwise fail to remedy the Section 2 violation, the Court should enter its own map on or before

March 15, 2022 (one week prior to the current candidate filing deadline). Other courts have employed a similar procedure where defendants were recalcitrant or incompetent in remedying a Section 2 violation. *See, e.g., Montes v. City of Yakima*, 2015 WL 11120964, at *7 (E.D. Wash. Feb. 17, 2015) (concluding that Defendants' second proposal "would not fully remedy the Section 2 violation" and therefore "the duty falls on the district court to impose a constitutionally acceptable plan that will remedy the Section 2 violation" by adopting map drawn by Plaintiffs' expert Dr. Cooper); *Chapman v. Meier*, 420 U.S. 1, 27 (1975) (directing trial court "to proceed with dispatch to resolve this seemingly interminable problem" should legislature again fail to enact a constitutionally acceptable plan).

We appreciate the Court's attention to this matter.

Respectfully submitted,

/s/ *Deborah A. Jeon*
Deborah A. Jeon (Bar #06905)
Tierney Peprah (Bar #21986)
AMERICAN CIVIL LIBERTIES UNION
OF MARYLAND
3600 Clipper Mill Road Suite 350
Baltimore, MD 21211
(410) 889-8555
jeon@aclu-md.org

/s/ *Andrew D. Freeman*
Andrew D. Freeman (Bar #03867)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202-6701
(410) 962-1030
adf@browngold.com

/s/ *John A. Freedman*
John A. Freedman (Bar #20276)
Mark D. Colley (Bar #16281)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, N.W.
Washington, D.C. 20001
(202) 942-5000
john.freedman@arnoldporter.com

Michael Mazzullo (pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, NY 10019
(212) 836-8000
michael.mazzullo@arnoldporter.com

*Counsel for Plaintiffs*