IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| BALTIMORE COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BALTIMORE COUNTY, MARYLAND, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 1:21-cv-03232-LKG |

**DEFENDANT BALTIMORE COUNTY'S
RESPONSE TO PLAINTIFFS' MARCH 10, 2022 STATUS REPORT**

Defendant Baltimore County, Maryland ("Baltimore County" or the "County"), through undersigned counsel, hereby responds to Plaintiffs' Status Report, ECF 60, filed on March 10, 2022, and for cause states:

1.　Plaintiffs' Status Report reflects their manipulation of the relevant data in a last-ditch effort to rebut Baltimore County's showing that its new proposed redistricting map strengthens District 2 into a crossover district that will allow Black voters to elect candidates of their choice.

2.　The population numbers presented by Plaintiffs in their Status Report are substantially different than the population numbers submitted by the County, ECF 57-4, because Plaintiffs use statistics – "citizen voting age population" – that they themselves claim "hurts communities of color" rather than the statistics mandated by Maryland law for redistricting purposes. Common Cause, *Citizen Voting Age Redistricting*, https://www.commoncause.org/wp-

1

content/uploads/2019/09/CVAP-Redistricting-one-pager-FINAL1.pdf (last visited March 10, 2022) ("Some states want to draw districts based on citizen voting age rather than using total population. This would result in districts in violation of core constitutional values.").

3. In redistricting matters, Maryland law requires local jurisdictions, like Baltimore County, to use Census population data distributed by the Maryland Department of Planning that is adjusted for incarcerated persons. Md. Code Ann., Local Government, § 1-1307 (discussing the use of "population count" in redistricting). That is the data that the Baltimore County Council used in preparing its new proposed redistricting map. That data, set forth in the County's submission at ECF 57-4, establishes that District 2 is a majority-minority district that would allow for strong crossover support from white Democrats, and District 4 would remain a "safe" district that retains Black voting strength:

**Total Population Summary:**

| Council District | White | Black or African American | Hispanic or Latino | Asian | Two or More Races | Other Race | Am. Indian & Alaska Native | Native Hawaiian & Other Pac. Islander |
|---|---|---|---|---|---|---|---|---|
| 1 | 46.61% | 27.66% | 8.72% | 11.65% | 4.53% | 0.61% | 0.19% | 0.02% |
| 2 | 44.07% | 41.33% | 6.57% | 4.02% | 3.26% | 0.60% | 0.14% | 0.02% |
| 3 | 75.03% | 7.53% | 5.55% | 7.60% | 3.70% | 0.41% | 0.13% | 0.04% |
| 4 | 22.16% | 62.34% | 6.47% | 4.62% | 3.62% | 0.63% | 0.14% | 0.03% |
| 5 | 62.12% | 18.91% | 4.85% | 9.20% | 4.29% | 0.39% | 0.19% | 0.03% |
| 6 | 50.80% | 31.46% | 6.97% | 5.85% | 4.17% | 0.52% | 0.20% | 0.03% |
| 7 | 60.97% | 19.50% | 10.96% | 1.95% | 5.50% | 0.51% | 0.58% | 0.03% |
| Total | 51.82% | 29.67% | 7.18% | 6.39% | 4.17% | 0.52% | 0.23% | 0.03% |

**Voting Age Population Summary:**

| Council District | White | Black or African American | Hispanic or Latino | Asian | Two or More Races | Other Race | Am. Indian & Alaska Native | Native Hawaiian & Other Pac. Islander |
|---|---|---|---|---|---|---|---|---|
| 1 | 49.87% | 27.39% | 7.31% | 11.16% | 3.56% | 0.50% | 0.18% | 0.03% |
| 2 | 45.80% | 41.22% | 5.52% | 4.12% | 2.65% | 0.51% | 0.15% | 0.02% |
| 3 | 77.74% | 7.01% | 4.58% | 7.39% | 2.75% | 0.36% | 0.12% | 0.05% |
| 4 | 24.82% | 61.12% | 5.58% | 4.64% | 3.14% | 0.54% | 0.14% | 0.02% |
| 5 | 66.37% | 16.91% | 3.96% | 8.92% | 3.26% | 0.35% | 0.20% | 0.03% |
| 6 | 54.15% | 29.91% | 6.09% | 5.93% | 3.26% | 0.43% | 0.21% | 0.02% |
| 7 | 65.96% | 17.95% | 8.80% | 1.96% | 4.26% | 0.42% | 0.62% | 0.03% |
| Total | 55.12% | 28.62% | 5.99% | 6.29% | 3.27% | 0.44% | 0.24% | 0.03% |

4. Throughout this litigation, in discussing the demographics and districting plans at issue, Plaintiffs have relied on "voting age population" rather than "citizen voting age population." *See, e.g.*, ECF 1 (referring to "voting age population" throughout); ECF 28-1 at 6-7. Yet Plaintiffs' Status Report, for the first time, relies on *citizen* voting age population to argue that the County's redrawn District 2 is still majority-white, rather than the majority-minority district it is when Maryland law is considered and voting age population is assessed (as both parties have done throughout this litigation). ECF 60. Plaintiffs' Status Report does not make this shift clear or explain the difference between its numbers and those in the County's submission.

5. Instead, it is Plaintiffs' expert William Cooper's Third Declaration that asserts—again, for the first time in this litigation—that citizen voting age population is suddenly "critical" to determining whether the redistricting map complies with the Court's directives. ECF 60-1 ¶ 3. His declaration explains why Plaintiffs' numbers differ from Baltimore County's: Cooper infers that because 42% of Baltimore County's total Latinx population are noncitizens, the Latinx voting age population in District 2 (and no other minority or white population) should be similarly discounted. *Id.* Only through this selective manipulation of the population numbers do Plaintiffs reach the incorrect conclusion that District 2 will remain majority-white under the County's new proposed redistricting plan.

6. Cooper also includes exhibits showing that he relies upon American Community Survey Data from July 2017 rather than census data or the adjusted census data required by Maryland law, further skewing his results. ECF 60-1, Ex. 1, Ex. 2C.

7. Neither Plaintiffs nor Cooper identify any Supreme Court or Fourth Circuit authority supporting their view that citizen voting age population is the relevant benchmark—especially when it was not the benchmark when Plaintiffs pursued their Motion for Preliminary

Injunction. *See Johnson v. De Grandy*, 512 U.S. 997, 1008 (1994) (declining to decide "which characteristic of minority populations (*e.g.*, age, citizenship) ought to be the touchstone for proving a dilution claim and devising a sound remedy").

8. Further, even in the circuits that require the use of citizen voting age population in Voting Rights Act cases, citizenship data must be reliable. *See Negron v. City of Miami Beach, Fla.*, 113 F.3d 1563, 1569 (11th Cir. 1997) ("Of course, the requirement that voting age population data be further refined by citizenship data applies only where there is reliable information indicating a significant difference in citizenship rates between the majority and minority populations."). Here, however, Cooper does not provide a citation to his assertion that 42% of Baltimore County's total Latinx population are noncitizens. He does not present any data on the citizenship of Latinx (or Asian, or any other race) in District 2 itself and therefore cannot justify discounting 42% of them to arrive at his distorted results. And, it is almost impossible to obtain reliable data on citizenship since citizenship was excluded from the 2020 census and that is the data set that the Baltimore County Council is required adjust for incarcerated persons per Maryland law and use in redistricting. *See Dep't. of Commerce v. New York*, 139 S. Ct. 2551 (2019)[1]; *see also Federation for Am. Immigration Reform v. Klutznick*, 486 F.Supp. 564, 568 (DDC 1980) (question about citizenship would "inevitably jeopardize the overall accuracy of the population count," partly because of added response burden but also because noncitizens faced with a citizenship question would be less likely to respond due to fears of "the information being used against them").

---

[1] In fact, in testifying at the trial in this case, Dr. Barreto advocated against the inclusion of citizenship on the 2020 census and "credibly concluded that Hispanic households would be substantially less willing to participate in the census if there were a citizenship question, regardless of whether they were given assurances that their responses would be kept confidential." *New York v. United States Dep't of Com.*, 351 F. Supp. 3d 502, 581 (S.D.N.Y. 2019).

9. It is unclear what data set Plaintiffs' other expert, Dr. Barreto, used in his own analysis. In any event, regardless of the data used, Plaintiffs concede that Anthony Brown, whom they claim was the candidate of choice for Black voters in 2014, would have won District 2 under the County's new proposed redistricting map. ECF 60 at 5. Dr. Barreto also shows that, in 2018 when Gov. Larry Hogan was running as a popular incumbent, would have been neck and neck with Ben Jealous in District 2. *Id*. Therefore, Plaintiffs incorrectly conclude that District 2 in the new proposed redistricting map will not allow Black voters to elect candidates of their choice in that jurisdiction.

10. This Court should evaluate the County's new proposed redistricting map based on the requirements of Maryland law and the reliable voting age population that both parties have consistently used until this point in the litigation.

11. Finally, should the Court accept the new proposed redistricting map, the Baltimore County Council is prepared to convene an emergency legislative session today at 3:30 PM to introduce the draft proposed bill and begin the process for enacting the new proposed redistricting map into law.

WHEREFORE, Defendant Baltimore County, Maryland respectfully submits this Response to Plaintiffs' March 10, 2022 Status Report.

Dated:  March 11, 2022          Respectfully submitted,

*/s/ Ava E. Lias-Booker*
Ava E. Lias-Booker (Fed. Bar No. 05022)
Melissa O. Martinez (Fed. Bar No. 28975)
**McGuireWoods LLP**
500 E. Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4400
(410) 659-4599 Fax
alias-booker@mcguirewoods.com
mmartinez@mcguirewoods.com

Kathryn M. Barber (Admitted *Pro Hac Vice*)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1000
(804) 775-1061 Fax
kbarber@mcguirewoods.com

*Counsel for Defendant Baltimore County, Maryland*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of March 2022, a copy of the foregoing Defendant Baltimore County's Response to Plaintiffs' March 10, 2022 Status Report was served via the Court's CM/ECF system upon all counsel of record.

        */s/ Melissa O. Martinez*
        Melissa O. Martinez