**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| BALTIMORE COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. LKG-21-03232 |
| BALTIMORE COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

## JOINT STATUS REPORT

Plaintiffs Baltimore County Branch of the National Association for the Advancement of Colored People, League of Women Voters of Baltimore County, Common Cause of Maryland, Charles Sydnor, Anthony Fugett, Dana Vickers Shelley, Danita Tolson, Sharon Blake, Gerald Morrison, and Niesha McCoy ("Plaintiffs"), along with Defendant Baltimore County, Maryland (the "County"), by their undersigned counsel and pursuant to this Court's Order of July 6, 2022, ECF 89, hereby submit a Joint Status Report confirming that the Fourth Circuit has granted *en banc* review of *Stinnie v. Holcomb* and setting forth their respective views on whether the stay should be lifted.

### *EN BANC* REVIEW OF *STINNIE V. HOLCOMB* WAS GRANTED

On August 9, 2022, the Fourth Circuit granted *en banc* review of *Stinnie v. Holcomb*, No. 21-1756, ECF 66. The Fourth Circuit set a schedule that provides for completion of briefing by the end of September, but it has yet to set a date for oral argument.

## THE PARTIES' POSITIONS ON WHETHER THE STAY SHOULD BE LIFTED

## PLAINTIFFS' POSITION

1.  Given the pending *en banc* review of *Stinnie v. Holcomb*, Plaintiffs propose that, to preserve judicial and party resources, the stay currently in place with respect to Plaintiffs' fee memorandum be continued until 30 days after the Fourth Circuit's issuance of its mandate in *Stinnie*, at which point the parties should file another joint status report.

2.  The two legal questions presented by the appellants in *Stinnie v. Holcomb* are:

> 1. Should this Court overturn *Smyth* and adopt an updated standard consistent with current Supreme Court precedent for determining prevailing party status [for the purpose of an award of attorneys' fees] in cases involving entry of preliminary injunctions where the cases are subsequently mooted by legislative action?

> 2. Are Plaintiffs prevailing parties when they obtained a merits-based preliminary injunction that materially altered the relationship among the parties in a way that directly benefited Plaintiffs and remained in place when the case was mooted by legislative action after entry of the preliminary injunction?

Those questions are directly applicable to the Plaintiffs' fee memorandum in this case. Here, as in *Stinnie*, the Plaintiffs obtained a merits-based preliminary injunction that materially altered the relationship among the parties in a way that directly benefited the Plaintiffs (by requiring the County to re-draw the lines for its council districts in a manner that complied with Section 2 of the Voting Rights Act) and remained in place through legislative action of the County Council to comply with the preliminary injunction.

3.  It would therefore be a waste of both the parties' and the Court's resources for the parties to brief, and for the Court to consider and rule on, a fee petition under the Fourth Circuit's current law when new guidance is likely to be forthcoming after *en banc* review of *Stinnie*. In the absence of a further stay, Plaintiffs, the County, and the Court will have to expend substantial resources briefing and deciding the issue under the current standards, then have to re-brief and re-decide the

motion after the Fourth Circuit issues its *en banc* opinion. No party would be harmed by a further stay, as the stay preserves the status quo and allows the County to avoid paying fees to oppose Plaintiffs' motion and does not require the County to pay the fees sought by Plaintiffs in their fee petition.

4.   In the alternative, if the Court prefers to lift the current stay and move forward with briefing Plaintiffs' motion for attorneys' fees, and taking into consideration other commitments, including several briefs and a jury trial in October, Plaintiffs propose that their memorandum in support of their motion for fees be due on the later of November 4, 2022, or three weeks after the Court issues its order on this matter.

5.   Plaintiffs met and conferred with the County to suggest a continuance of the stay currently in place given the pending *en banc* review in *Stinnie v. Holcomb*.  The County responded that it disagrees with Plaintiffs' position and believes the stay should be lifted.

## BALTIMORE COUNTY'S POSITION

The Court should lift the stay and order the parties to brief the issue of Plaintiffs' entitlement to attorneys' fees now instead of waiting for the Fourth Circuit's *en banc* opinion in *Stinnie*.  This is because, even if the court overturns *Stinnie*, Plaintiffs will still not be "prevailing parties" entitled to attorneys' fees.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes a district court to award reasonable attorneys' fees only to "prevailing parties."  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept*., 532 U.S. 598 (2001).  Here, Plaintiffs are not entitled to attorneys' fees because they are not prevailing parties under current Fourth Circuit law, which does not permit recovery of legal fees in connection with preliminary injunction rulings.  *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268 (4th Cir. 2002); *Stinnie v. Holcomb*, 37 F.4th 977 (4th Cir.

2022).  Likewise, Plaintiffs would fare no better even if the Fourth Circuit were to adopt the majority view of those circuits that permit recovery of fees to parties obtaining preliminary injunctive relief under certain circumstances.  *See, e.g., Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021).

As an initial matter, in *Smyth*, the Fourth Circuit rejected the plaintiffs' claim for fees simply due to the issuance of a preliminary injunction.  As the Court explained,  "[t]he interplay of [] equitable and legal considerations and the less stringent assessment of the merits of claims that are part of the preliminary injunction context belie the assertion that [a] district court's decision to grant a preliminary injunction was an 'enforceable judgment[] on the merits' or something akin to one for prevailing party purposes." 282 F.3d at 277 (quoting *Buckhannon*, 532 U.S. at 604).[1]

Nevertheless, even if the Fourth Circuit ultimately overturns *Stinnie* and adopts the majority view that, under certain circumstances, a preliminary injunction is sufficient to confer "prevailing party" status, the preliminary injunction here did not "create a material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* (internal

---

[1] As reflected in the Court's second opinion, the original preliminary injunction ruling was not based on a fully developed factual record.  The second opinion which accepted the County's redrawn map and modified the original preliminary injunction ruling, is based upon existing historical election data from District 2 showing crossover or coalition voting that predated the challenge by Plaintiffs.  ECF 80 at 7-8.  That detailed voting data was not presented until the subsequent hearing to establish that District 2 as originally drawn and redrawn was a crossover/coalition district in which black voters voted for their preferred candidate.  ECF 73; ECF 74.  After presentation of that more detailed voting data, the Court modified the preliminary injunction and approved the second map based on the more complete factual record.  ECF 80.  In addition, the County did not have the opportunity to challenge the admissibility of the opinions and testimonies of Plaintiffs' experts, Dr. Matt Barreto and William Cooper, including but not limited to Dr. Barreto's election performance analysis, which he admitted did not comport with Fourth Circuit law, and Mr. Cooper's proposed maps, which failed to comply with traditional redistricting principles.

citations omitted).  Following the Supreme Court's decision in *Buckhannon*, the Fifth Circuit in *Veasey* established three requirements that must be satisfied for a plaintiff to demonstrate prevailing party status upon the entry of preliminary injunctive relief: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered."  13 F.4th at 368 (citing *Buckhannon*, 532 U.S. at 604).

Plaintiffs cannot demonstrate any of these factors.  From the outset, Plaintiffs have incorrectly persisted that the Voting Rights Act required the creation of a second majority-Black district in Baltimore County[2] and that no other remedy is sufficient.[3]  Indeed, the ACLU's premature website press release post published on February 20, 2022 incorrectly claiming victory reiterated Plaintiffs' desired outcome, which did not occur: "a judge ruled the County Council's redistricting plan ***violates*** the Voting Rights Act" and "[t]he Council's recommendation of ***a single Black super-majority district was a mistake*** they must rectify now."  ACLU of Maryland, http://www.aclu-md.org/ (emphasis added).

---

[2] Plaintiffs' approach is legally unsupported because "[a] racially gerrymandered districting scheme, like all laws that classify citizens on the basis of race, is constitutionally suspect.  The constitutional wrong occurs when race becomes the 'dominant and controlling' consideration.  This is true whether or not the reason for the racial classification is benign or the purpose remedial."  *Shaw v. Hunt*, 517 U.S. 899, 904-05 (1996).

[3] *See* Complaint for Declaratory and Injunctive Relief, ECF 1 at 10-11, 13, 15; Memorandum in Support of Motion for Preliminary Injunction, ECF 28-1 at 6-7, 9-10, 18, 23, 27, 35, 38-39; Declaration of William S. Cooper, ECF 28-2 at 6, Declaration of Anthony S. Fugett, ECF 28-4 at 13-14; Reply to Response to Motion for Preliminary Injunction, ECF 41 at 5, 9-11; Second Declaration of Matthew A. Barreto, ECF 41-1 at 3, 8, 11-12; Second Declaration of William S. Cooper, ECF 41-2 at 4; Plaintiffs' Status Report, ECF 56 at 1, 3; Exhibit A – ADF Email Chain, ECF 56-1 at 3-4; Plaintiffs' Status Report Pursuant to ECF 59, ECF 60 at 1, 7, 9-11; Third Declaration of William S. Cooper, ECF 60-1 at 3; Plaintiffs' Supplemental Brief Pursuant to the Court's March 11, 2022 Order, ECF 68 at 5, 7, 9-10, 20, 25-26; Fifth Declaration of Matt Barreto, Ph. D., ECF 75-1 at 9.

After the County redrew its original map to enhance District 2 as a coalition and cross-over district, Plaintiffs continued to insist on a second majority-Black district. ECF 68. They argued that the County's redrawn redistricting map as still insufficient to comport with the requirements of the Voting Rights Act. *Id*. They argued vigorously in briefs and at the March 21, 2022 hearing that the County continued to dilute Black voting strength and that the new map did not improve the County's alleged racial polarization. After the Court's March 24, 2022 oral decision, the ACLU told the press that the redrawn map had not changed enough, and that it was considering its next steps. *Federal Judge Rules In Baltimore County's Favor In New Redistricting Plan*, CBS Baltimore, https://www.cbsnews.com/baltimore/news/federal-judge-rules-in-baltimore-countys-favor-in-new-redistricting-plan/ (last visited Sept. 6, 2022). Plaintiffs have even threatened to file an Amended Complaint depending on the outcome of the July primary elections under the allegedly inadequate map.[4] ECF 83 at 3. In short, the legal relationship between the County and Plaintiffs has not changed, let alone materially, since the outset of this case.

Despite the Plaintiffs' insistence, the Court has twice rejected the position that only a map with two majority-Black districts is acceptable under the Voting Rights Act, and Plaintiffs have not sought an appeal. Both of this Court's opinions explicitly state that the creation of a second majority-Black district is ***not*** required under the Voting Rights Act. The Court's original

---

[4] Plaintiffs reserved the right to file an Amended Complaint based on the results of the 2022 Democratic Primary in District 2, in which Black candidate and Plaintiff in this case Mr. Anthony Fuggett, ran against white candidate, incumbent Mr. Izzy Patoka. As in the past, based on the most recent election results, Mr. Patoka is clearly the Black voters' candidate of choice. Mr. Patoka won 31 of the 34 precincts in District 2 by a margin of 73.6% to 26.4%. Mr. Patoka won in all of the majority-Black precincts in which he ran as incumbent (meaning the precincts that existed in the former District 2). Of the eight new District 2 precincts, Mr. Patoka won five precincts, including three precincts that are over 80% Black.

preliminary injunction ruling, which was based on a limited factual record, contemplated the creation of a second majority-Black district:

> For the reasons that follow, plaintiffs have shown that they have a substantial likelihood of success on the merits of their Section 2 claim, because they can demonstrate that: (1) *the group of Black County voters located on the western side of the County is sufficiently large and geographically compact to create more than one reasonably compact majority-Black district*; (2) the group of Black County voters "is politically cohesive;" (3) the White majority in the County votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidates; and (4) the totality of the circumstances, including the factors that the Supreme Court has instructed the Court to consider, show that Black County voters have less opportunity than White County voters to elect candidates of their choice to the Council.

ECF 55 at 9 (emphasis added).  Ultimately, however, the Court did not require the creation of a second majority-Black district.  *Id.* at 23 ("[T]he proper remedy is to create a County redistricting plan that includes either an additional majority-Black County District, **_OR_** an additional County District in which Black voters otherwise have an opportunity to elect a representative of their choice.") (emphasis added).

Similarly, the Court's Order adopting the County's new map explicitly held that a second majority-Black district was not required.  ECF 80 at 10 ("[T]he County may also remedy this violation by proposing a remedial redistricting plan that provides for an additional County district in which Black County voters otherwise have an opportunity to elect a representative of their choice and that comports with the requirements of the Voting Rights Act.").  This Order modified the original preliminary injunction ruling after the development of a fuller record, making plain the Court's rejection of Plaintiffs' premise that the failure to adopt a second majority-Black voting district violated the Voting Rights Act.  ECF 80 at 10.  The modified ruling also established, based on voting record evidence that pre-existed the case, that coalition and crossover voting was prevalent in the County and that the establishment of a second majority-Black district was not

required.  *Id*. at 7-8 (explaining that Councilmembers Patoka and Almond were the candidates of choice by Black voters).

In short, although Plaintiffs have been persistent in their position, the basis for the suit and the relief sought – a second majority-Black district – was never granted to them.  *See Veasey*, 13 F.4th at 368 ("[T]o demonstrate prevailing party status . . . relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered."); *see also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 233–34 (3d Cir. 2008) (finding a material alteration in the legal relationship between the parties where the court "grant[ed] plaintiffs virtually all the relief they sought"); *Dupuy v. Samuels*, 423 F.3d 714, 723 (7th Cir. 2005) ("[W]e rejected the idea that any 'plaintiff who has won a preliminary injunction has won something even if the injunction is reversed' and noted that 'constrain[ing] the defendants' conduct until [the injunction] is reversed' is not sufficient to confer prevailing status on a party.") (quoting *Palmer v. City of Chicago*, 806 F.2d 1316, 1319 (7th Cir. 1986)).

At this juncture, Plaintiffs will likely walk back their insistence upon a second majority-Black district and reframe their requested relief as the Court's rejection of the first map.  But under the prevailing party analysis, the Court's rejection of a redistricting map in and of itself is inconsequential without a map that Plaintiffs themselves laud and believe comports with the Voting Rights Act.  Plaintiffs cannot obtain attorneys' fees by claiming credit for the County's voluntary submission, and the Court's adoption, of the current map because the Supreme Court has explicitly held that simply being a "catalyst" for the desired result is not enough to obtain attorneys' fees.  *Buckhannon*, 532 U.S. at 604.

Plaintiffs are asking this Court to continue a case that has been closed since May 9, 2022 for the ***possibility*** that the issue will be adjudicated in their favor at some uncertain time in the

future.  Plaintiffs are not, and have never been, entitled to attorneys' fees at any point in this case. The possibility that a preliminary injunction could be sufficient to confer prevailing party status in the future is inadequate to extend this case any longer.  Accordingly, the stay should be lifted and the parties should be required to brief the issue of Plaintiffs' entitlements to attorneys' fees.

## **<u>CONCLUSION</u>**

The Parties are available for a status conference to further discuss their respective positions outlined herein at the Court's convenience.

[*signatures on following page*]

9

Dated:  September 6, 2022

Respectfully submitted,

/s/ Andrew D. Freeman

Andrew D. Freeman (Bar #03867)
BROWN GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202-6701
(410) 962-1030
adf@browngold.com

Deborah A. Jeon (Bar #06905)
Tierney Peprah (Bar # 21986)
AMERICAN CIVIL LIBERTIES UNION
OF MARYLAND
Clipper Mill Road Suite 350
Baltimore, MD 21211
(410) 889-8555
jeon@aclu-md.org

John A. Freedman (Bar #20276)
Mark D. Colley (Bar #16281)
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, N.W.3600
Washington, D.C. 20001
(202) 942-5000
john.freedman@arnoldporter.com

Michael Mazzullo (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER
LLP
250 W. 55th Street
New York, NY 10019
(212) 836-8000
michael.mazzullo@arnoldporter.com

**Counsel for Plaintiffs**

/s/ Ava E. Lias-Booker

Ava E. Lias-Booker (Fed. Bar No. 05022)
Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 E. Pratt Street, Suite 1000
Baltimore, Maryland 21202-3169
(410) 659-4400
(410) 659-4599 Fax
alias-booker@mcguirewoods.com
mmartinez@mcguirewoods.com

Kathryn M. Barber (Admitted *Pro Hac Vice*)
**MCGUIREWOODS LLP**
Gateway Plaza, 800 East Canal Street
Richmond, VA  23219-391
(804) 775-1000
(804) 775-1061 Fax
kbarber@mcguirewoods.com

**Counsel for Baltimore County, Maryland**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of September, 2022, a copy of the foregoing

Joint Status Report was served via the Court's CM/ECF system upon all counsel of record.


*/s/ Melissa O. Martinez*
Melissa O. Martinez